**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

_____

| | | |
|---|---|---|
| Matthew S. Logue, individually and as | : | Docket No.: 1:16-cv-3937 |
| Administrator of the Estate of Shelby Ann Logue | : | |
| 20 Scarborough Fare | : | |
| Stewartstown, PA 17363 | : | |
| *Plaintiff* | : | JURY TRIAL DEMANDED |
| | : | |
| v. | : | |
| | : | |
| Patient First Corporation, individually and/or | : | |
| doing business as Patient First Urgent Care, | : | |
| Bel Air | : | |
| 5000 Cox Road | : | |
| Glen Allen, VA 23058 | : | |
| -and- | : | |
| Patient First Urgent Care, Bel Air | : | |
| c/o 560 W. MacPhail Road | : | |
| Bel Air, MD 21014 | : | |
| -and- | : | |
| Boris Gronas, D.O. | : | |
| c/o Patient First Urgent Care, Bel Air | : | |
| 560 W. MacPhail Road | : | |
| Bel Air, MD 21014 | : | |
| -and- | : | |
| Drs. Gehris, Jordan, Day & Associates, LLC | : | |
| 520 Upper Chesapeake Drive, Suite 206 | : | |
| Bel Air, MD 21014 | : | |
| -and- | : | |
| Katherine V. Day, M.D. | : | |
| c/o Drs. Gehris, Jordan & Associates, LLC | : | |
| 520 Upper Chesapeake Drive, Suite 206 | : | |
| Bel Air, MD 21014 | : | |
| -and- | : | |
| SurgCenter of Bel Air, LLC | : | |
| 209 Thomas Street | : | |
| Bel Air, MD 21014 | : | |
| -and- | : | |
| American Anesthesiology of Maryland, P.C., | : | |
| formerly known as | : | |
| Physicians Anesthesia Associates, P.A. | : | |
| 110 West Road, Suite 210 | : | |
| Towson, MD 21204 | : | |
| -and- | : | |

Paul D. Gilmore, M.D.                                    :
c/o SurgCenter of Bel Air, LLC                          :
209 Thomas Street                                       :
Bel Air, MD 21014                                       :
                        *Defendants*                    :
_____

## COMPLAINT

Plaintiff, Matthew Logue, individually and as Administrator of the Estate of Shelby Ann

Logue, by and through his undersigned counsel, sues the above-named Defendants, and for cause

of action states as follows:

## JURISDICTION

1.  This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. §1332 since the

amount in controversy exceeds the jurisdictional threshold and diversity of citizenship exists.

2.  Venue is proper in the United States District Court for the District of Maryland under 28

U.S.C. §1391 and the Annotated Code of Maryland, Courts and Judicial Proceedings Article,

§§6-10(b) & 4-401(1). The incident complained of herein occurred in Harford County,

Maryland.

## PARTIES

3.  Plaintiff, Matthew Logue, individually and as Administrator of the Estate of Shelby

Logue, is an adult individual residing at the address above-captioned.

4.  Decedent, Shelby Ann Logue, died intestate on May 20, 2014.

5.  Plaintiff, Matthew Logue, was duly appointed Administrator of the Estate of Shelby Ann

Logue, deceased, by the Register of Wills of York County, Pennsylvania, and in this capacity he

acts in part herein on behalf of the Estate, the beneficiaries of the Estate and the potential

beneficiaries of the Estate.

6.  The heirs, potential heirs and/or beneficiaries of Shelby Ann Logue and/or her estate are

her husband, Plaintiff, Matthew Logue and the minor children of decedent, Shelby Ann Logue and Plaintiff, Matthew Logue:  C.S.L. (1/30/99), A.C.L. (4/9/03), B.P.L. (9/7/04) and D.A.L. (9/28/06).

7.  Defendant, Patient First Corporation, individually and/or doing business as Patient First Urgent Care, Bel Air (hereinafter "Patient First Corporation"), was and/or is a corporation, partnership, professional corporation, professional association, health care system, hospital, health care clinic and/or other similar entity providing medical, nursing, health care and/or hospital services to the public, organized and existing under the laws of the Commonwealth of Virginia, with a principal place of business located at the address above-captioned and doing substantial business in Bel Air, Maryland.

8.  At all times material hereto, defendant, Patient First Corporation, acted individually and/or by and through its parent corporations, subsidiaries, successors, agents, apparent agents, ostensible agents, servants, contractors, workers and/or employees, including the facilities, defendants, doctors, nurses, technicians and/or other healthcare workers identified and/or described herein and/or in its medical records pertaining to plaintiff's decedent, Shelby Ann Logue, who were then and there acting within the course and scope of their employment, agency and/or contract.

9.  Defendant, Patient First Urgent Care, Bel Air (hereinafter "Patient First Bel Air"), was and/or is a corporation, partnership, professional corporation, professional association, health care system, hospital, health care clinic and/or other similar entity providing medical, nursing, health care and/or hospital services to the public, organized and existing under the laws of the Commonwealth of Virginia and/or the State of Maryland, with a principal place of business located at the address above-captioned.

10. At all times material hereto, defendant, Patient First Bel Air, acted individually and/or by and through its parent corporations, subsidiaries, successors, agents, apparent agents, ostensible agents, servants, contractors, workers and/or employees, including the facilities, defendants, doctors, nurses, technicians and/or other healthcare workers identified and/or described herein and/or in its medical records pertaining to plaintiff's decedent, Shelby Ann Logue, who were then and there acting within the course and scope of their employment, agency and/or contract.

11. At all times material hereto, defendant, Boris Gronas, D.O. (hereinafter "Dr. Gronas"), was and/or is a physician allegedly licensed to practice medicine under the laws of the State of Maryland, specializing in family medicine and other related medical fields, and resided and/or did substantial business at the address above-captioned.

12. At all times material hereto, defendant, Dr. Gronas, acted individually and/or as the agent, apparent agent, ostensible agent, servant, contractor, worker and/or employee of defendant Patient First Corporation and/or defendant Patient First Bel Air, and was then and there acting within the course and scope of his employment, agency and authority.

13. Defendant, Drs. Gehris, Jordan, Day & Associates, LLC, was and/or is a corporation, limited liability company, partnership, professional corporation, professional association, health care system, hospital, health care clinic and/or other similar entity providing medical, nursing, health care and/or hospital services to the public, organized and existing under the laws of the State of Maryland, with a principal place of business located at the address above-captioned.

14. At all times material hereto, defendant, Drs. Gehris, Jordan, Day & Associates, LLC, acted individually and/or by and through its parent corporations, subsidiaries, successors, agents, apparent agents, ostensible agents, servants, contractors, workers and/or employees, including the facilities, defendants, doctors, nurses, technicians and/or other healthcare workers identified

and/or described herein and/or in its medical records pertaining to plaintiff's decedent, Shelby Ann Logue, who were then and there acting within the course and scope of their employment, agency and/or contract.

15. Defendant, SurgCenter of Bel Air, LLC, was and/or is a corporation, limited liability company, partnership, professional corporation, professional association, health care system, hospital, health care clinic and/or other similar entity providing medical, nursing, health care and/or hospital services to the public, organized and existing under the laws of the State of Maryland, with a principal place of business located at the address above-captioned.

16. At all times material hereto, defendant, SurgCenter of Bel Air, LLC, acted individually and/or by and through its parent corporations, subsidiaries, successors, agents, apparent agents, ostensible agents, servants, contractors, workers and/or employees, including the facilities, defendants, doctors, nurses, technicians and/or other healthcare workers identified and/or described herein and/or in its medical records pertaining to plaintiff's decedent, Shelby Ann Logue, who were then and there acting within the course and scope of their employment, agency and/or contract.

17. Defendant, American Anesthesiology of Maryland, P.C., formerly known as Physicians Anesthesia Associates, P.A. (hereinafter "Physicians Anesthesia Associates, P.A.), was and/or is a corporation, partnership, professional corporation, professional association, health care system, hospital, health care clinic and/or other similar entity providing medical, nursing, health care and/or hospital services to the public, organized and existing under the laws of the State of Maryland, with a principal place of business located at the address above-captioned.

18. At all times material hereto, defendant, Physicians Anesthesia Associates, P.A., acted individually and/or by and through its parent corporations, subsidiaries, successors, agents,

apparent agents, ostensible agents, servants, contractors, workers and/or employees, including the facilities, defendants, doctors, nurses, technicians and/or other healthcare workers identified and/or described herein and/or in its medical records pertaining to plaintiff's decedent, Shelby Ann Logue, who were then and there acting within the course and scope of their employment, agency and/or contract.

19. At all times material hereto, defendant, Katherine V. Day, M.D. (hereinafter "Dr. Day"), was and/or is a physician allegedly licensed to practice medicine under the laws of the State of Maryland, specializing in otolaryngology and other related medical fields, and resided and/or did substantial business at the address above-captioned. Plaintiff is asserting a professional negligence claim against this Defendant.

20. At all times material hereto, defendant, Dr. Day**,** acted individually and/or as the agent, apparent agent, ostensible agent, servant, contractor, worker and/or employee of defendant SurgCenter of Bel Air, LLC and/or defendant Drs. Gehris, Jordan, Day & Associates, LLC, and was then and there acting within the course and scope of her employment, agency and authority.

21. At all times material hereto, defendant, Paul D. Gilmore, M.D. (hereinafter "Dr. Gilmore"), was and/or is a physician allegedly licensed to practice medicine under the laws of the State of Maryland, specializing in anesthesia and other related medical fields, and resided and/or did substantial business at the address above-captioned.

22. At all times material hereto, defendant, Dr. Gilmore**,** acted individually and/or as the agent, apparent agent, ostensible agent, servant, contractor, worker and/or employee of defendant Physicians Anesthesia Associates, P.A., SurgCenter of Bel Air, LLC and/or defendant Drs. Gehris, Jordan, Day & Associates, LLC, and was then and there acting within the course and scope of his employment, agency and authority.

## FACTS

23. Since approximately March of 2001, Plaintiff's decedent, Shelby Ann Logue (hereinafter "Mrs. Logue"), was a patient of Patient First Corporation, treating primarily at their location in Bel Air, MD.

24. Beginning in approximately March of 2012, Mrs. Logue also sought treatment from Patient First Corporation at Patient First East York.

25. Through the time of her death, Mrs. Logue regularly saw Patient First Corporation, Patient First Bel Air and/or Patient First East York as a primary care practice for various ailments, sicknesses, and routine physicals.

26. On or about January 15, 2014, Mrs. Logue presented to an ear, nose and throat doctor, Katherine Day, M.D., and Drs. Gehris, Jordan, Day & Associates, LLC, with complaints of nasal obstruction and constant nasal congestion.

27. At that time, Dr. Day and/or Drs. Gehris, Jordan, Day & Associates, LLC, took a history and conducted an examination of Mrs. Logue.

28. At that time, Dr. Day and/or Drs. Gehris, Jordan, Day & Associates, LLC, noted that Mrs. Logue had a medical history that included obesity, asthma, potential sleep apnea and a potentially deviated septum.

29. At that time, Dr. Day and/or Drs. Gehris, Jordan, Day & Associates, LLC, noted that Mrs. Logue's examination also demonstrated a moderate deviated septum, hypertrophy of the nasal turbinates and dysphagia.

30. At that time, Dr. Day and/or Drs. Gehris, Jordan, Day & Associates, LLC, performed on Mrs. Logue a nasal endoscopy with a flexible endoscope, and ordered Zithromax, Prednisone, and a modified barium swallow.

31. On or about March 13, 2014, Mrs. Logue again presented to Dr. Day and/or Drs. Gehris, Jordan, Day & Associates, LLC, with complaints of nasal obstruction and constant nasal congestion.

32. Mrs. Logue also reported that she contracted sore throats 3-4 times per year for more than 3 years, and at least 1-2 of these episodes lead to strep throat.

33. At that time, Dr. Day and/or Drs. Gehris, Jordan, Day & Associates, LLC, noted that Mrs. Logue's exam was significant for a moderate deviated septum, hypertrophy of the nasal turbinates and dysphagia.

34. At that time, Dr. Day and/or Drs. Gehris, Jordan, Day & Associates, LLC, recommended that Mrs. Logue undergo a septoplasty and tonsillectomy and scheduled this surgery for April 21, 2014.

35. In anticipation of the septoplasty and tonsillectomy, on or about March 26, 2014, Dr. Day and/or Drs. Gehris, Jordan, Day & Associates, LLC, forwarded orders for pre-operative testing to Patient First Corporation, Patient First Bel Air and/or Patient First East York.

36. The orders for pre-operative testing requested that Patient First Corporation, Patient First Bel Air and/or Patient First East York perform a history and physical, an EKG, and certain lab work on Mrs. Logue, and provide the results to Dr. Day and/or Drs. Gehris, Jordan, Day & Associates, LLC.

37. On or about April 17, 2014, Mrs. Logue presented to Patient First Corporation and/or Patient First East York for the requested pre-operative testing and was seen by defendant, Esmeralda Del Rosario, M.D.

38. At that time, Dr. Del Rosario interpreted Mrs. Logue's EKG as abnormal, and noted what she interpreted as sinus tachycardia, negative T-waves, and anterior ischemia.

39. As a result of the EKG interpretation, Dr. Del Rosario decided that Mrs. Logue required cardiac clearance prior to her surgery and referred her to a cardiologist for a stress echocardiogram.

40. On or about April 18, 2014, Mrs. Logue presented to Cardiac Diagnostic Associates of York for cardiac clearance.

41. At that time, a stress echocardiogram was ordered, but Mrs. Logue was unable to walk adequately due to shortness of breath.

42. Due to Mrs. Logue's inability to walk for a stress echocardiogram, she underwent a dobutamine stress echocardiogram.

43. The reviewing cardiologist noted in a formal written report to Mrs. Logue's doctors that the results of Mrs. Logue's dobutamine stress echocardiogram were normal, making her a low risk surgical candidate from a cardiac standpoint.

44. The reviewing cardiologist further noted in that report that he was "more concerned with her respiratory status" and expressed concern whether "from a reactive airway standpoint, she would be an optimal surgical candidate."

45. While awaiting the results of Mrs. Logue's cardiac clearance, the date of Mrs. Logue's surgery was postponed to May 19, 2014.

46. The report of the cardiac testing, including the cardiologist's reported concerns about Mrs. Logue's respiratory status for surgery, were sent to Patient First Corporation, Patient First East York and/or Dr. Del Rosario.

47. The report of the cardiac testing, including the cardiologist's reported concerns about Mrs. Logue's respiratory status for surgery, were received by Patient First Corporation, Patient First East York and/or Dr. Del Rosario.

48. Upon information, the report of the cardiac testing, including the cardiologist's concerns about Mrs. Logue's respiratory status for surgery, were electronically scanned into Mrs. Logue's electronic medical record file maintained by Patient First Corporation and, therefore, was available to and accessible by any healthcare provider at any Patient First facility, including Patient First East York and Patient First Bel Air.

49. On or about April 21, 2014, Patient First Corporation, Patient First East York and/or Patient First Bel Air faxed the report of the cardiac testing, including the cardiologist's concerns about Mrs. Logue's respiratory status for surgery, to defendants, Dr. Day and/or Drs. Gehris, Jordan, Day & Associates, LLC.

50. Upon information, Dr. Day personally reviewed the report of the cardiac testing, including the cardiologist's concerns about Mrs. Logue's respiratory status for surgery, but failed to order and/or perform respiratory/pulmonary workup and/or consultation for surgical clearance.

51. On or about April 29, 2014, in anticipation of the rescheduled septoplasty and tonsillectomy, Dr. Day and/or Drs. Gehris, Jordan, Day & Associates, LLC, forwarded orders for pre-operative testing to Patient First Corporation, Patient First Bel Air and/or Patient First East York.

52. Dr. Day's and/or Drs. Gehris, Jordan, Day & Associates, LLC's orders for pre-operative testing requested that Patient First Corporation, Patient First Bel Air and/or Patient First East York perform a history and physical examination, and conduct certain lab work on Mrs. Logue, and provide the results to Dr. Day and/or Drs. Gehris, Jordan, Day & Associates, LLC.

53. Dr. Day's and/or Drs. Gehris, Jordan, Day & Associates, LLC's orders for pre-operative testing did not request any respiratory/pulmonary clearance, despite the concerns raised by the cardiologist about Mrs. Logue's respiratory status for surgery, about which Dr. Day and/or Drs.

Gehris, Jordan, Day & Associates, LLC were and/or should have been aware.

54. On or about May 14, 2014, Mrs. Logue presented to Patient First Corporation and/or Patient First Bel Air for the requested pre-operative testing and was seen by defendant, Boris Gronas, D.O.

55. Dr. Gronas performed the requested pre-operative testing and indicated that Mrs. Logue was cleared for surgery.

56. Dr. Gronas did not perform, order and/or recommend respiratory/pulmonary work-up or consultation for surgical clearance, despite the concerns raised by the cardiologist about Mrs. Logue's respiratory status for surgery, about which he was and/or should have been aware.

57. On or about May 19, 2014, Mrs. Logue presented with her husband to Dr. Day, Drs. Gehris, Jordan, Day & Associates, LLC, SurgCenter of Bel Air, LLC, Physicians Anesthesia Associates, P.A. and/or Paul Gilmore, M.D., for her scheduled surgery.

58. Upon information, Dr. Day, Drs. Gehris, Jordan, Day & Associates, LLC, SurgCenter of Bel Air, LLC, Physicians Anesthesia Associates, P.A. and/or Dr. Gilmore were also aware of the concerns raised by the cardiologist about Mrs. Logue's respiratory status for surgery, as well as her medical history, including her history of obesity, asthma and sleep apnea.

59. Upon information, Dr. Gilmore administered anesthesia to Mrs. Logue for surgery, which was performed by Dr. Day.

60. Following the surgery, Mrs. Logue was taken to the Post Anesthesia Care unit (PACU) at the SurgCenter at approximately 10:00 am.

61. While in the PACU, Mrs. Logue was placed on an oxygen saturation monitor.

62. While in the PACU, Mrs. Logue was administered Dilaudid for pain at 10:40 am and 10:55 am.

63. At or about 11:45 am, Mrs. Logue was noted to be sleepy at times and her oxygen saturation levels were noted to drop when she fell asleep.

64. At or about 1:30 pm, Mrs. Logue was noted to be using "IS" to maintain her oxygen saturation levels.

65. At that time, Mrs. Logue was evaluated by Dr. Gilmore, who recommended that she be discharged.

66. At that time, Mrs. Logue was noted to have deceased breath sounds and slight wheezing in the upper lobes of her lungs.

67. At that time, Dr. Gilmore ordered albuterol to be administered to Mrs. Logue.

68. At or about 2:15 pm, Mrs. Logue had completed her albuterol treatment.

69. At or about 2:30 pm, Mrs. Logue's oxygen saturation levels were noted to be fluctuating between 88-97%, of which Dr. Gilmore was aware.

70. At that time, Mrs. Logue was taken out of the bed in which she was recovering and was placed in a chair to dress.

71. At or about 2:45 pm, Mrs. Logue's oxygen saturation levels were noted to be fluctuating between 90-100%, of which Dr. Gilmore was aware.

72. At that time, Dr. Day was advised of Mrs. Logue's fluctuating oxygen saturation levels.

73. At or about 2:50 pm, Dr. Gilmore discussed Mrs. Logue's condition with Dr. Day, and, despite her decreased oxygen saturation levels and her medical history, both agreed to discharge her with no further monitoring.

74. At that time, Mrs. Logue was discharged with instructions to sleep upright in a recliner.

75. Additionally, Mrs. Logue was discharged with a prescription for Percocet to take for post-operative pain.

76. Mr. Logue took Mrs. Logue home, where she followed the discharge instructions provided to her by Dr. Day, Drs. Gehris, Jordan, Day & Associates, LLC, SurgCenter of Bel Air, LLC, Physicians Anesthesia Associates, P.A. and/or Dr. Gilmore.

77. In the early morning hours of May 20, 2014, Mr. Logue awoke to find his wife unconscious and pulseless.

78. One of the Logue's sons called 911 and Mr. Logue attempted CPR.

79. After arrival of the EMTs, tragically, Mrs. Logue was unable to be revived and was pronounced dead in the Logue home.

80. As a direct and proximate result of individual, joint, several and/or alternative negligence and liability-producing conduct of defendants, Mrs. Logue died on May 20, 2014.

81. As a direct and proximate result of the individual, joint, several and/or alternative negligence and liability-producing conduct of defendants, Mrs. Logue suffered serious injuries and damages including, but not limited to: respiratory distress and/or failure, cardiopulmonary distress and/or failure, emotional distress, extreme physical pain, severe neurological injury, cardiac distress and/or failure, anxiety, fear, and ultimately an agonizing death.

82. As a direct and proximate result of the individual, joint, several and/or alternative negligence and liability-producing conduct of defendants, Mrs. Logue experienced confusion, anxiety, distress,  extreme physical and emotional pain, fear of impending death, feelings of helplessness, conscious pain and suffering and a loss of life's pleasures.

83. As a direct and proximate result of the individual, joint, several and/or alternative negligence and liability-producing conduct of defendants, Mrs. Logue has been prevented from attending to and performing her everyday duties, jobs, hobbies, responsibilities and activities.

84. As a direct and proximate result of the individual, joint, several and/or alternative

negligence and liability-producing conduct of defendants, Mrs. Logue suffered a loss of income/earnings and/or earning capacity.

85. As a direct and proximate result of the individual, joint, several and/or alternative negligence and liability-producing conduct of defendants, Plaintiff, Matthew Logue, has experienced and may forever continue to experience great emotional and/or physical pain, suffering, anxiety, depression, nightmares, flashbacks, embarrassment, grief and loss of life's pleasures.

86. As a direct and proximate result of the individual, joint, several and/or alternative negligence and liability-producing conduct of defendants, Plaintiff, Matthew Logue, and Mrs. Logue during her lifetime, were forced to spend money and incur obligations to cover healthcare and other costs and expenses as a result of Mrs. Logue's injuries, damages and death, as well as funeral expenses and related costs.

87. As a direct and proximate result of the individual, joint, several and/or alternative negligence and liability-producing conduct of defendants, Plaintiff, Matthew Logue, has and/or may have experienced health care costs of his own, a loss of earnings and/or earning capacity, and/or an inability to engage in his usual and customary hobbies, duties, work and/or responsibilities.

88. As a direct and proximate result of the individual, joint, several and/or alternative negligence and liability-producing conduct of defendants, Plaintiff, Matthew Logue, has suffered the loss of consortium, society and support of his wife.

**COUNT I**
**NEGLIGENCE/SURVIVAL**
**PLAINTIFF v. DEFENDANT, BORIS GRONAS, D.O.**

89. Plaintiff incorporates by reference the above paragraphs as if fully set forth herein at

length.

90. The aforesaid injuries, damages and death suffered by plaintiff and decedent were caused by the individual, joint, several and/or alternative negligence and liability producing conduct of defendant, Boris Gronas, D.O., which included the following:

    a.    Failing to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, work up and/or treat Mrs. Logue's respiratory and/or pulmonary status prior to her surgery of 5/19/14;

    b.    Failing to timely, properly and/or adequately recognize, assess, respond to, report, work up and/or treat the concerns raised by the cardiologist regarding Mrs. Logue's respiratory and/or pulmonary status for surgery;

    c.    Increasing Mrs. Logue's risk of an adverse event by improperly clearing her for surgery;

    d.    Failing to timely, properly and/or adequately perform appropriate tests given Mrs. Logue's signs, symptoms, medical history, and/or condition;

    e.    Failing to request or order appropriate consultations given Mrs. Logue's signs, symptoms, medical history, and/or condition;

    f.    Failing to address, request or order the respiratory/pulmonary concerns, consultation and/or work up described, recommended or suggested by Mrs. Logue's cardiologist;

    g.    Failing to timely, properly and/or adequately communicate with Mrs. Logue's other health care providers regarding the respiratory/pulmonary concerns, consultation and/or work up described, recommended or suggested by Mrs. Logue's cardiologist;

h.    Failing to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, work up and/or treat Mrs. Logue's history, signs, symptoms, findings and/or conditions, for example, those related to her respiratory/pulmonary status and the patterns and significance thereof;

i.    Failing to timely, properly and/or adequately order, perform, interpret, respond to, work up and report on tests, observations, studies, films and examinations to aid in the diagnosis and treatment of Mrs. Logue's history, signs, symptoms, findings and/or conditions, for example, those related to her respiratory/pulmonary status and the patterns and significance thereof;

j.    Failing to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, work up and/or treat the aforesaid and other condition(s) and/or distress from which Mrs. Logue suffered preoperatively;

k.    Failing to timely, properly and/or adequately order, perform, repeat, read, interpret, diagnose, react to and/or report on consultation reports, prior medical records, vital signs, physical exams, blood pressure analysis, CBC analysis, blood and/or fluid volume analysis, and/or apparent clinical signs and symptoms of Mrs. Logue;

l.    Failing to timely, properly and/or adequately enter, review, revise and/or carry out physician orders and/or recommendations regarding Mrs. Logue;

m.    Failing to timely, properly and/or adequately work up Mrs. Logue to discover, diagnose and then treat the source and/or cause of Mrs. Logue's history, signs, symptoms, findings and/or conditions, for example, those related to her respiratory/pulmonary status and the patterns and significance thereof;;

n.    Failing to timely, properly and/or adequately consider, recognize, diagnose and/or report that Mrs. Logue was not a proper surgical candidate under the circumstances;

o.    Failing to timely, properly and/or adequately become knowledgeable or otherwise aware of Mrs. Logue's prior and continually developing and/or changing clinical/medical picture and/or history;

p.    Failing to timely, properly and/or adequately determine and respond to the significance and/or medical implication(s) of Mrs. Logue's   prior and continually developing and/or changing clinical/medical picture and/or history;

q.    Failing to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, keep appraised of, work up and/or to treat Mrs. Logue's clinical/medical condition and/or her signs, symptoms, findings, medical history and/or test results;

r.    Failing to timely, properly and/or adequately avail himself of available and pertinent medical writings, publications, information and diagnostic technology both prior to and during Mrs. Logue's treatment;

s.    Failing to timely, properly and/or adequately order and/or perform indicated and appropriate monitoring, diagnostic tests, consultations and medical procedures to aid in the timely, proper and/or adequate diagnosis and treatment of Mrs. Logue's signs, symptoms, findings, test results and/or medical conditions;

t.    Failing to timely, properly and/or adequately avail himself of information, test results, studies, opinions, assessments, diagnoses and materials regarding Mrs.

Logue which were available at or through Patient First and/or Patient First Bel Air, as well as from other doctors, therapists, medical offices and hospitals;

u. Failing to timely, properly and/or adequately maintain a continuity in care among the various participating and/or available healthcare providers;

v. Failing to timely, properly and/or adequately perform and/or repeat patient observation, examinations, tests and/or studies;

w. Failing to timely, properly and/or adequately order, interpret, act on, work up and/or report findings from consultations, examinations, tests, observations and/or studies;

x. Failing to give significance to the findings, recommendations and/or diagnoses of other physicians, therapists and/or nurses involved in Mrs. Logue's care and treatment, particularly those related to her respiratory and/or pulmonary status for surgery;

y. Failing to timely, properly and/or adequately respond to notification by other physicians, nurses and/or healthcare workers of Mrs. Logue's condition and/or the signs, findings and/or symptoms thereof;

z. Improperly ignoring  and/or discounting the significance of findings, recommendations and/or diagnoses of other physicians, nurses and/or healthcare workers with regard to Mrs. Logue's condition, signs, findings and/or symptoms;

aa. Relinquishing responsibility for the care and/or treatment of Mrs. Logue to others less qualified or not able to appropriately investigate, work up and/or treat her condition(s);

bb.  Failing to timely, properly and/or adequately make entries in Mrs. Logue's medical chart and/or comply with applicable rules, protocols, regulations, policies, procedures and/or by-laws with respect thereto, so as to properly document Mrs. Logue's signs, symptoms, medical conditions, and/or orders or recommendations relating thereto;

cc.  Failing to timely, properly and/or adequately follow and/or promulgate rules, regulations, policies, procedures and/or protocols, such as, for example, those that involve continuity in care and communication between health care providers; surgical clearance of a patient; following up on test results and/or medical care recommendations for a patient; recognizing, assessing, responding to, diagnosing, reporting and/or treating potential respiratory and/or pulmonary compromise; entering, reviewing, revising and/or carrying out pre-operative testing and clearance for patients such as Mrs. Logue; responding to notification by other physicians, nurses and/or healthcare workers regarding a patient's condition and/or distress and/or the signs, findings and symptoms thereof; proper and adequate medical charting;

dd.  Failing to timely, properly and/or adequately review available medical records regarding Mrs. Logue;

ee.  Increasing the risk of harm to Mrs. Logue, for the reasons set forth in the above subparagraphs.

**WHEREFORE**, Plaintiff, Matthew Logue, individually and as Administrator of the Estate of Shelby Ann Logue, deceased, hereby demands judgment in his favor and against defendant, Boris Gronas, D.O., individually, jointly, severally and/or in the alternative, for

compensatory damages, interest, costs of suit, and such other and further relief as this court deems just.

## COUNT II
## NEGLIGENCE/SURVIVAL
## PLAINTIFF v. DEFENDANTS, PATIENT FIRST CORPORATION AND PATIENT FIRST BEL AIR

91. Plaintiff incorporates by reference the above paragraphs as if fully set forth herein at length.

92. The aforesaid injuries and damages suffered by plaintiff and decedent were caused by the individual, joint, several and/or alternative negligence and liability producing conduct of defendants, Patient First Corporation and Patient First Bel Air, which consisted of the following:

    a.    Failing to timely, properly and/or adequately adopt, promulgate, adhere to and/or enforce appropriate rules, regulations, by-laws, policies and procedures with regard to diagnosing, assessing, treating, consulting on, evaluating, working up, ordering consultations for and/or caring for patients suffering from and/or potentially suffering from the same or similar condition(s) as Mrs. Logue suffered from and/or was thought might suffer from, as described herein;

    b.    Failing to timely, properly and/or adequately adopt, promulgate, adhere to and/or enforce appropriate rules, regulations, by-laws, policies and procedures with regard to, for example, those that involve continuity in care and communication between health care providers; surgical clearance of a patient; following up on test results for a patient; recognizing, assessing, responding to, diagnosing, reporting and/or treating potential respiratory and/or pulmonary compromise; entering, reviewing, revising and/or carrying out pre-operative testing and clearance for patients such as Mrs. Logue; responding to

notification by other physicians, nurses and/or healthcare workers regarding a patient's condition and/or distress and/or the signs, findings and symptoms thereof;  proper and adequate medical charting and medical chart review;

c.      Failing to timely, properly and/or adequately adopt, promulgate, adhere to and/or enforce appropriate rules, regulations, by-laws, policies and procedures pertaining to supervision, oversight and/or the scope of practice of physicians, nurses and/or other health care providers providing patient care in its facilities;

d.      Failing to timely, properly and/or adequately select, train, supervise and/or have available its agents, servants, employees and staff personnel;

e.      Failing to timely, properly and/or adequately monitor the availability and competency of  members of its health care staff, and the adequacy of their patient care and treatment;

f.      Failing to timely, properly and/or adequately have in place medical review procedures so that they could obtain knowledge regarding the performance of their doctors and/or healthcare providers, the quality of their patient care, their availability and their compliance with established policies, procedures, protocols and the like;

g.      Failing to timely, properly and/or adequately discharge those doctors and/or healthcare providers whose services and skills fell below the general recognized standards of acceptable medical services and/or skills;

h.      Failing to timely, properly and/or adequately train, supervise, fire and/or review agents/employees under defendants' supervision and/or control, given that defendants   knew   and/or   reasonably   should   have   known   that   those

agents/employees were improperly and/or inadequately trained and/or supervised, and/or that those agents/employees were not properly and/or adequately performing the duties and responsibilities associated with their respective positions;

i.  Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that, for example, there was a failure to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, work up, seek consultation on and/or treat Mrs. Logue's respiratory and/or pulmonary status prior to her surgery of 5/19/14;

j.  Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other healthcare services within its walls in that there was a failure to timely, properly and/or adequately recognize, assess, respond to, report, work up, seek consultation on and/or treat the concerns raised by the cardiologist regarding Mrs. Logue's respiratory and/or pulmonary status for surgery;

k.  Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a substantial increase in Mrs. Logue's risk of an adverse event by improperly clearing her for surgery and/or failing to take steps to properly clear her for surgery;

l.  Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its

walls in that there was a failure to perform appropriate tests given Mrs. Logue's signs, symptoms, medical history, and/or condition;

m.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to order appropriate consultations given Mrs. Logue's signs, symptoms, medical history, and/or condition;

n.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, work up, seek consultation on and/or treat Mrs. Logue's history, signs, symptoms, findings and/or conditions, for example, those related to her respiratory/pulmonary status and the patterns and significance thereof;

o.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately order, perform, interpret, respond to, work up, seek consultation on and report on tests, observations, studies, films and examinations to aid in the diagnosis and treatment of Mrs. Logue's history, signs, symptoms, findings and/or conditions, for example,  those related to her respiratory/pulmonary status and the patterns and significance thereof;

p.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its

walls in that there was a failure to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, work up, seek consultation on and/or treat the aforesaid and other condition(s) and/or distress from which Mrs. Logue suffered and/or may have suffered preoperatively;

q.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately order, perform, repeat, read, interpret, diagnose, react to, work up, seek consultation on and/or report on consultation reports, prior medical records, vital signs, physical exams, blood pressure analysis, CBC analysis, blood and/or fluid volume analysis, and/or apparent clinical signs and symptoms of Mrs. Logue;

r.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately enter, review, revise and/or carry out physician orders and/or recommendations regarding Mrs. Logue;

s.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately work up Mrs. Logue to discover, diagnose and then treat the source and/or cause of Mrs. Logue's history, signs, symptoms, findings and/or conditions, for example, those related to her respiratory/pulmonary status and the patterns and significance thereof;

t.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately consider, recognize, diagnose, work up, seek consultation on and/or report on concerns regarding Mrs. Logue's surgical candidacy under the circumstances;

u.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately become knowledgeable or otherwise aware of Mrs. Logue's prior and continually developing and/or changing clinical/medical picture and/or history;

v.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately determine and respond to the significance and/or medical implication(s) of Mrs. Logue's prior and continually developing and/or changing clinical/medical picture and/or history;

w.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, keep appraised of, work up, seek consultation on and/or to treat Mrs. Logue's clinical/medical condition and/or her signs, symptoms, findings, medical history and/or test results;

x.   Failing to timely, properly and/or adequately train, supervise and/or oversee all

persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately avail itself and/or its staff of available and pertinent medical writings, publications, information and diagnostic technology both prior to and during Mrs. Logue's treatment;

y.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately order and/or perform indicated and appropriate monitoring, diagnostic tests, consultations and medical procedures to aid in the timely, proper and/or adequate diagnosis and treatment of Mrs. Logue's signs, symptoms, findings, test results and/or medical conditions;

z.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately avail itself and/or its staff of information, test results, studies, opinions, assessments, diagnoses and materials regarding Mrs. Logue which were available at or through Patient First and/or Patient First Bel Air, as well as from other doctors, therapists, medical offices and hospitals;

aa.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately maintain a continuity in care among the various participating and/or available healthcare

providers;

bb.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately perform and/or repeat patient observation, examinations, tests and/or studies;

cc.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately order, interpret, act on and/or report findings from consultations, examinations, tests, observations and/or studies;

dd.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to give significance to the findings, recommendations and/or diagnoses of other physicians, therapists and/or nurses involved in Mrs. Logue's care and treatment, particularly those related to her respiratory and/or pulmonary status for surgery;

ee.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately respond to notification by other physicians, nurses and/or healthcare workers of Mrs. Logue's condition and/or the signs, findings and/or symptoms thereof;

ff.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its

walls in that there was an improper ignoring and/or discounting of the significance of findings, recommendations and/or diagnoses of other physicians, nurses and/or healthcare workers with regard to Mrs. Logue's condition, signs, findings and/or symptoms;

gg. Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a relinquishing of responsibility for the care and/or treatment of Mrs. Logue to others less qualified or not able to treat her condition(s);

hh. Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately make entries in and/or review Mrs. Logue's medical chart and/or comply with applicable rules, protocols, regulations, policies, procedures and/or by-laws with respect thereto, so as to properly document and/or review Mrs. Logue's history, signs, symptoms, findings, diagnoses, consultations, work up and/or medical conditions, and or to properly document and/or review defendants' follow-up on and compliance with recommendations and/or consultations;

ii. Increasing the risk of harm to Mrs. Logue, for the reasons set forth in the above subparagraphs;

jj. Being vicariously liable for the negligence and/or other liability producing conduct of its employees, agents and contractors, as described in Count I.

**WHEREFORE**, Plaintiff, Matthew Logue, individually and as Administrator of the

Estate of Shelby Ann Logue, deceased, hereby demands judgment in his favor and against defendants, Patient First Corporation and Patient First Bel Air, individually, jointly, severally and/or in the alternative, for compensatory damages, interest, costs of suit, and such other and further relief as this court deems just.

## COUNT III
## NEGLIGENCE/SURVIVAL
## PLAINTIFF v. DEFENDANT, KATHERINE V. DAY, M.D.

93. Plaintiff incorporates by reference the above paragraphs as if fully set forth herein at length.

94. The aforesaid injuries, damages and death suffered by plaintiff and decedent were caused by the individual, joint, several and/or alternative negligence and liability producing conduct of defendant, Katherine V. Day, M.D., which included the following:

    a.    Failing to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, work up and/or treat Mrs. Logue's respiratory and/or pulmonary status and/or her probably sleep apnea prior to her surgery of 5/19/14;

    b.    Failing to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, work up and/or treat Mrs. Logue's respiratory and/or pulmonary status following her surgery of 5/19/14;

    c.    Improperly proceeding with Mrs. Logue's surgery without proper respiratory and/or pulmonary clearance(s) and/or work up of her probably sleep apnea;

    d.    Increasing Mrs. Logue's risk of an adverse event by improperly proceeding with her surgery without proper respiratory and/or pulmonary clearance(s) and/or work up of her probable sleep apnea;

e.      Performing Mrs. Logue's surgery outside of a hospital or a facility capable of necessary and/or appropriate post-operative monitoring;

f.      Discharging Mrs. Logue following her surgery;

g.      Increasing Mrs. Logue's risk of an adverse event by discharging her following her surgery;

h.      Failing to timely, properly and/or adequately monitor Mrs. Logue's postoperative status, including her postoperative pulse oxygenation levels, respiratory/pulmonary status, response to medications, level of consciousness, and the like;

i.      Failing to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, work up and/or treat Mrs. Logue's postoperative status, including her postoperative pulse oxygenation levels, respiratory/pulmonary status, response to medications, level of consciousness, and the like;

j.      Improperly prescribing and/or administering medications to Mrs. Logue;

k.      Failing to timely, properly and/or adequately observe and monitor Mrs. Logue post-operatively;

l.      Failing to timely, properly and/or adequately respond to Mrs. Logue's post-operative medical status and conditions, and changes with regard thereto;

m.      Discharging Mrs. Logue when she was not stable nor appropriate for discharge under the circumstances;

n.      Failing to timely, properly and/or adequately perform appropriate tests given Mrs. Logue's signs, symptoms, medical history, and/or condition;

o.      Failing to request or order appropriate consultations given Mrs. Logue's signs,

symptoms, medical history, and/or condition;

p.      Failing to address, request or order the respiratory/pulmonary concerns, consultation and/or work up described, recommended or suggested by Mrs. Logue's cardiologist;

q.      Failing to timely, properly and/or adequately communicate with Mrs. Logue's other health care providers regarding the respiratory/pulmonary concerns, consultation and/or work up described, recommended or suggested by Mrs. Logue's cardiologist;

r.      Failing to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, work up and/or treat Mrs. Logue's history, signs, symptoms, findings and/or conditions, for example, those related to her respiratory/pulmonary status and the patterns and significance thereof;

s.      Failing to timely, properly and/or adequately order, perform, interpret, respond to, work up and report on tests, observations, studies, films and examinations to aid in the diagnosis and treatment of Mrs. Logue's history, signs, symptoms, findings and/or conditions, for example, those related to her respiratory/pulmonary status and the patterns and significance thereof;

t.      Failing to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, work up and/or treat the aforesaid and other condition(s) and/or distress from which Mrs. Logue suffered preoperatively and/or postoperatively;

u.      Failing to timely, properly and/or adequately order, perform, repeat, read, interpret, diagnose, react to and/or report on consultation reports, prior medical

records, vital signs, physical exams, blood pressure analysis, CBC analysis, blood and/or fluid volume analysis, and/or apparent clinical signs and symptoms of Mrs. Logue;

v.    Failing to timely, properly and/or adequately enter, review, revise and/or carry out physician orders and/or recommendations regarding Mrs. Logue;

w.    Failing to timely, properly and/or adequately work up Mrs. Logue to discover, diagnose and then treat the source and/or cause of Mrs. Logue's history, signs, symptoms, findings and/or conditions, for example, those related to her respiratory/pulmonary status and the patterns and significance thereof;

x.    Failing to timely, properly and/or adequately consider, recognize, diagnose and/or report that Mrs. Logue was not a proper surgical candidate under the circumstances;

y.    Failing to timely, properly and/or adequately consider, recognize, diagnose and/or report that Mrs. Logue was not a proper candidate for postoperative discharge under the circumstances;

z.    Failing to admit Mrs. Logue to a hospital or other appropriate facility for pre-operative and/or post-operative care, treatment, observation and monitoring;

aa.   Failing to perform surgery upon Mrs. Logue in a facility capable of providing her with all necessary post-operative care, treatment, observation and monitoring;

bb.   Failing to timely, properly and/or adequately become knowledgeable or otherwise aware of Mrs. Logue's prior and continually developing and/or changing clinical/medical picture and/or history;

cc.   Failing to timely, properly and/or adequately determine and respond to the significance and/or medical implication(s) of Mrs. Logue's  prior and continually developing and/or changing clinical/medical picture and/or history;

dd.   Failing to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, keep appraised of, work up and/or to treat Mrs. Logue's clinical/medical condition and/or her signs, symptoms, findings, medical history and/or test results;

ee.   Failing to timely, properly and/or adequately avail himself/herself of available and pertinent medical writings, publications, information and diagnostic technology both prior to and during Mrs. Logue's treatment;

ff.   Failing to timely, properly and/or adequately order and/or perform indicated and appropriate monitoring, diagnostic tests, consultations and medical procedures to aid in the timely, proper and/or adequate diagnosis and treatment of Mrs. Logue's signs, symptoms, findings, test results and/or medical conditions;

gg.   Failing to timely, properly and/or adequately avail himself/herself of information, test results, studies, opinions, assessments, diagnoses and materials regarding Mrs. Logue which were available at or through SurgCenter of Bel Air, LLC, Drs. Gehris, Jordan, Day & Associates, LLC and/or Physicians Anesthesia Associates, P.A., as well as from other doctors, therapists, medical offices and hospitals;

hh.   Failing to timely, properly and/or adequately maintain a continuity in care among the various participating and/or available healthcare providers;

ii.   Failing to timely, properly and/or adequately perform and/or repeat patient observation, examinations, tests and/or studies;

jj.   Failing to timely, properly and/or adequately order, interpret, act on, work up and/or report findings from consultations, examinations, tests, observations and/or studies;

kk.   Failing to give significance to the findings, recommendations and/or diagnoses of other physicians, therapists and/or nurses involved in Mrs. Logue's care and treatment, particularly those related to her respiratory and/or pulmonary status for surgery;

ll.   Failing to timely, properly and/or adequately respond to notification by other physicians, nurses and/or healthcare workers of Mrs. Logue's condition and/or the signs, findings and/or symptoms thereof;

mm.   Improperly ignoring   and/or discounting the significance of findings, recommendations and/or diagnoses of other physicians, nurses and/or healthcare workers with regard to Mrs. Logue's condition, signs, findings and/or symptoms;

nn.   Relinquishing responsibility for the care and/or treatment of Mrs. Logue to others less qualified or not able to appropriately investigate, work up and/or treat her condition(s);

oo.   Failing to timely, properly and/or adequately make entries in Mrs. Logue's medical chart and/or comply with applicable rules, protocols, regulations, policies, procedures and/or by-laws with respect thereto, so as to properly document Mrs. Logue's signs, symptoms, medical conditions, and/or orders or

recommendations relating thereto;

pp.   Failing to timely, properly and/or adequately follow and/or promulgate rules, regulations, policies, procedures and/or protocols, such as, for example, those that involve continuity in care and communication between health care providers; surgical clearance of a patient; following up on test results and/or medical care recommendations for a patient;  recognizing, assessing, responding to, diagnosing, reporting and/or treating potential respiratory and/or pulmonary compromise;  entering, reviewing, revising and/or carrying out pre-operative testing and clearance for patients such as Mrs. Logue; proper and/or adequate preoperative and/or postoperative clearance for patients such as Mrs. Logue; responding to notification by other physicians, nurses and/or healthcare workers regarding a patient's condition and/or distress and/or the signs, findings and symptoms thereof;  proper and adequate medical charting and medical chart review; care, treatment, monitoring, observation and/or admission of patients such as Mrs. Logue, preoperatively and/or post-operatively;

qq.   Failing to timely, properly and/or adequately provide discharge instructions and/or patient education;

rr.   Increasing the risk of harm to Mrs. Logue, for the reasons set forth in the above subparagraphs.

**WHEREFORE**, Plaintiff, Matthew Logue, individually and as Administrator of the Estate of Shelby Ann Logue, deceased, hereby demands judgment in his favor and against defendants, Katherine V. Day, M.D., and Paul D. Gilmore, M.D., individually, jointly, severally and/or in the alternative, for compensatory damages, interest, costs of suit, and such other and

further relief as this court deems just.


## COUNT IV
## NEGLIGENCE/SURVIVAL
## PLAINTIFF v. DEFENDANT, PAUL D. GILMORE, M.D.

95. Plaintiff incorporates by reference the above paragraphs as if fully set forth herein at length.

96. The aforesaid injuries, damages and death suffered by plaintiff and decedent were caused by the individual, joint, several and/or alternative negligence and liability producing conduct of defendant, Paul D. Gilmore, M.D., which included the following:

a. Failing to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, work up and/or treat Mrs. Logue's respiratory and/or pulmonary status prior to her surgery of 5/19/14;

b. Failing to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, work up and/or treat Mrs. Logue's respiratory and/or pulmonary status following her surgery of 5/19/14;

c. Failing to timely, properly and/or adequately recognize, assess, respond to, report, work up and/or treat the concerns raised by the cardiologist regarding Mrs. Logue's respiratory and/or pulmonary status for surgery;

d. Improperly proceeding with Mrs. Logue's surgery without proper respiratory and/or pulmonary clearance(s);

e. Increasing Mrs. Logue's risk of an adverse event by improperly proceeding with her surgery without proper respiratory and/or pulmonary clearance(s);

f. Discharging Mrs. Logue following her surgery;

g.     Increasing Mrs. Logue's risk of an adverse event by discharging her following her surgery;

h.     Failing to timely, properly and/or adequately monitor Mrs. Logue's postoperative status, including her postoperative pulse oxygenation levels, respiratory/pulmonary status, response to medications, level of consciousness, and the like;

i.     Failing to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, work up and/or treat Mrs. Logue's postoperative status, including her postoperative pulse oxygenation levels, respiratory/pulmonary status, response to medications, level of consciousness, and the like;

j.     Improperly prescribing and/or administering medications to Mrs. Logue;

k.     Failing to timely, properly and/or adequately observe and monitor Mrs. Logue post-operatively;

l.     Failing to timely, properly and/or adequately response to Mrs. Logue's post-operative medical status and conditions, and changes with regard thereto;

m.     Discharging Mrs. Logue when she was not stable nor appropriate for discharge under the circumstances;

n.     Failing to timely, properly and/or adequately perform appropriate tests given Mrs. Logue's signs, symptoms, medical history, and/or condition;

o.     Failing to request or order appropriate consultations given Mrs. Logue's signs, symptoms, medical history, and/or condition;

p.     Failing to address, request or order the respiratory/pulmonary concerns, consultation and/or work up described, recommended or suggested by Mrs.

Logue's cardiologist;

q.     Failing to timely, properly and/or adequately communicate with Mrs. Logue's other health care providers regarding the respiratory/pulmonary concerns, consultation and/or work up described, recommended or suggested by Mrs. Logue's cardiologist;

r.     Failing to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, work up and/or treat Mrs. Logue's history, signs, symptoms, findings and/or conditions, for example, those related to her respiratory/pulmonary status and the patterns and significance thereof;

s.     Failing to timely, properly and/or adequately order, perform, interpret, respond to, work up and report on tests, observations, studies, films and examinations to aid in the diagnosis and treatment of Mrs. Logue's history, signs, symptoms, findings and/or conditions, for example, those related to her respiratory/pulmonary status and the patterns and significance thereof;

t.     Failing to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, work up and/or treat the aforesaid and other condition(s) and/or distress from which Mrs. Logue suffered preoperatively and/or postoperatively;

u.     Failing to timely, properly and/or adequately order, perform, repeat, read, interpret, diagnose, react to and/or report on consultation reports, prior medical records, vital signs, physical exams, blood pressure analysis, CBC analysis, blood and/or fluid volume analysis, and/or apparent clinical signs and symptoms of Mrs. Logue;

v.     Failing to timely, properly and/or adequately enter, review, revise and/or carry out physician orders and/or recommendations regarding Mrs. Logue;

w.     Failing to timely, properly and/or adequately work up Mrs. Logue to discover, diagnose and then treat the source and/or cause of Mrs. Logue's history, signs, symptoms, findings and/or conditions, for example, those related to her respiratory/pulmonary status and the patterns and significance thereof;

x.     Failing to timely, properly and/or adequately consider, recognize, diagnose and/or report that Mrs. Logue was not a proper surgical candidate under the circumstances;

y.     Failing to timely, properly and/or adequately consider, recognize, diagnose and/or report that Mrs. Logue was not a proper candidate for postoperative discharge under the circumstances;

z.     Failing to admit Mrs. Logue to a hospital or other appropriate facility for pre-operative and/or post-operative care, treatment, observation and monitoring;

aa.    Failing to perform surgery upon Mrs. Logue in a facility capable of providing her with all necessary post-operative care, treatment, observation and monitoring;

bb.    Failing to timely, properly and/or adequately become knowledgeable or otherwise aware of Mrs. Logue's prior and continually developing and/or changing clinical/medical picture and/or history;

cc.    Failing to timely, properly and/or adequately determine and respond to the significance and/or medical implication(s) of Mrs. Logue's  prior and continually developing and/or changing clinical/medical picture and/or history;

dd.   Failing to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, keep appraised of, work up and/or to treat Mrs. Logue's clinical/medical condition and/or her signs, symptoms, findings, medical history and/or test results;

ee.   Failing to timely, properly and/or adequately avail himself/herself of available and pertinent medical writings, publications, information and diagnostic technology both prior to and during Mrs. Logue's treatment;

ff.   Failing to timely, properly and/or adequately order and/or perform indicated and appropriate monitoring, diagnostic tests, consultations and medical procedures to aid in the timely, proper and/or adequate diagnosis and treatment of Mrs. Logue's signs, symptoms, findings, test results and/or medical conditions;

gg.   Failing to timely, properly and/or adequately avail himself/herself of information, test results, studies, opinions, assessments, diagnoses and materials regarding Mrs. Logue which were available at or through SurgCenter of Bel Air, LLC, Drs. Gehris, Jordan, Day & Associates, LLC and/or Physicians Anesthesia Associates, P.A., as well as from other doctors, therapists, medical offices and hospitals;

hh.   Failing to timely, properly and/or adequately maintain a continuity in care among the various participating and/or available healthcare providers;

ii.   Failing to timely, properly and/or adequately perform and/or repeat patient observation, examinations, tests and/or studies;

jj.   Failing to timely, properly and/or adequately order, interpret, act on, work up

and/or report findings from consultations, examinations, tests, observations and/or studies;

kk. Failing to give significance to the findings, recommendations and/or diagnoses of other physicians, therapists and/or nurses involved in Mrs. Logue's care and treatment, particularly those related to her respiratory and/or pulmonary status for surgery;

ll. Failing to timely, properly and/or adequately respond to notification by other physicians, nurses and/or healthcare workers of Mrs. Logue's condition and/or the signs, findings and/or symptoms thereof;

mm. Improperly ignoring   and/or discounting the significance of findings, recommendations and/or diagnoses of other physicians, nurses and/or healthcare workers with regard to Mrs. Logue's condition, signs, findings and/or symptoms;

nn. Relinquishing responsibility for the care and/or treatment of Mrs. Logue to others less qualified or not able to appropriately investigate, work up and/or treat her condition(s);

oo. Failing to timely, properly and/or adequately make entries in Mrs. Logue's medical chart and/or comply with applicable rules, protocols, regulations, policies, procedures and/or by-laws with respect thereto, so as to properly document Mrs. Logue's signs, symptoms, medical conditions, and/or orders or recommendations relating thereto;

pp. Failing to timely, properly and/or adequately follow and/or promulgate rules, regulations, policies, procedures and/or protocols, such as, for example, those

that involve continuity in care and communication between health care providers; surgical clearance of a patient; following up on test results and/or medical care recommendations for a patient; recognizing, assessing, responding to, diagnosing, reporting and/or treating potential respiratory and/or pulmonary compromise; entering, reviewing, revising and/or carrying out pre-operative testing and clearance for patients such as Mrs. Logue; proper and/or adequate preoperative and/or postoperative clearance for patients such as Mrs. Logue; responding to notification by other physicians, nurses and/or healthcare workers regarding a patient's condition and/or distress and/or the signs, findings and symptoms thereof; proper and adequate medical charting and medical chart review; care, treatment, monitoring, observation and/or admission of patients such as Mrs. Logue, preoperatively and/or post-operatively;

qq.   Failing to timely, properly and/or adequately provide discharge instructions and/or patient education;

rr.   Increasing the risk of harm to Mrs. Logue, for the reasons set forth in the above subparagraphs.

**WHEREFORE**, Plaintiff, Matthew Logue, individually and as Administrator of the Estate of Shelby Ann Logue, deceased, hereby demands judgment in his favor and against defendant, Paul D. Gilmore, M.D., individually, jointly, severally and/or in the alternative, for compensatory damages, interest, costs of suit, and such other and further relief as this court deems just.

## COUNT V
## NEGLIGENCE/SURVIVAL

**PLAINTIFF V. DEFENDANTS, DRS. GEHRIS, JORDAN, DAY & ASSOCIATES, LLC, SURGCENTER OF BEL AIR, LLC, AND PHYSICIANS ANESTHESIA ASSOCIATES, P.A.**

97. Plaintiff incorporates by reference the above paragraphs as if fully set forth herein at length.

98. The aforesaid injuries and damages suffered by plaintiff and decedent were caused by the individual, joint, several and/or alternative negligence and liability producing conduct of defendants, Drs. Gehris, Jordan, Day & Associates, LLC, SurgCenter of Bel Air, LLC, and Physicians Anesthesia Associates, P.A., which consisted of the following:

   a. Failing to timely, properly and/or adequately adopt, promulgate, adhere to and/or enforce appropriate rules, regulations, by-laws, policies and procedures with regard to diagnosing, assessing, treating, consulting on, evaluating, working up, orders consultations for and/or caring for patients suffering from and/or potentially suffering from the same or similar condition(s) as Mrs. Logue suffered from and/or was thought might suffer from, as described herein;

   b. Failing to timely, properly and/or adequately adopt, promulgate, adhere to and/or enforce appropriate rules, regulations, by-laws, policies and procedures with regard to, for example, those that involve continuity in care and communication between health care providers; surgical clearance of a patient; following up on test results for a patient; recognizing, assessing, responding to, diagnosing, reporting and/or treating potential respiratory and/or pulmonary compromise; entering, reviewing, revising and/or carrying out pre-operative testing and clearance for patients such as Mrs. Logue; proper and/or adequate postoperative monitoring of patients such as Mrs. Logue; responding

to notification by other physicians, nurses and/or healthcare workers regarding a patient's condition and/or distress and/or the signs, findings and symptoms thereof;  proper and adequate medical charting;

c.      Failing to timely, properly and/or adequately adopt, promulgate, adhere to and/or enforce appropriate rules, regulations, by-laws, policies and procedures pertaining to supervision, oversight and/or the scope of practice of physicians, nurses and/or other health care providers providing patient care in its facilities;

d.      Failing to timely, properly and/or adequately select, train, supervise and/or have available its agents, servants, employees and staff personnel;

e.      Failing to timely, properly and/or adequately monitor the availability and competency of  members of its health care staff, and the adequacy of their patient care and treatment;

f.      Failing to timely, properly and/or adequately have in place medical review procedures so that they could obtain knowledge regarding the performance of their doctors and healthcare providers, the quality of their patient care, their availability and their compliance with established policies, procedures, protocols and the like;

g.      Failing to timely, properly and/or adequately discharge those doctors and/or healthcare providers whose services and skills fell below the general recognized standards of acceptable medical services and/or skills;

h.      Failing to timely, properly and/or adequately train, supervise, fire and/or review agents/employees under defendants' supervision and/or control, given that defendants knew and/or reasonably should have known that those

agents/employees were improperly and/or inadequately trained and/or supervised, and/or that those agents/employees were not properly and/or adequately performing the duties and responsibilities associated with their respective positions;

i.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, work up and/or treat Mrs. Logue's respiratory and/or pulmonary status prior to her surgery of 5/19/14;

j.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, work up and/or treat Mrs. Logue's respiratory and/or pulmonary status following her surgery of 5/19/14;

k.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately recognize, assess, respond to, report, work up and/or treat the concerns raised by the cardiologist regarding Mrs. Logue's respiratory and/or pulmonary status for surgery;

l.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in improperly proceeding with Mrs. Logue's surgery without proper

respiratory and/or pulmonary clearance(s);

m.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in increasing Mrs. Logue's risk of an adverse event by improperly proceeding with her surgery without proper respiratory and/or pulmonary clearance(s);

n.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in discharging Mrs. Logue following her surgery;

o.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in increasing Mrs. Logue's risk of an adverse event by discharging her following her surgery;

p.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately monitor Mrs. Logue's postoperative status, including her postoperative pulse oxygenation levels, respiratory/pulmonary status, response to medications, level of consciousness, and the like;

q.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, work up and/or treat Mrs. Logue's

postoperative status, including her postoperative pulse oxygenation levels, respiratory/pulmonary status, response to medications, level of consciousness, and the like;

r.      Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in improperly prescribing and/or administering medications to Mrs. Logue;

s.      Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately observe and monitor Mrs. Logue post-operatively;

t.      Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately response to Mrs. Logue's post-operative medical status and conditions, and changes with regard thereto;

u.      Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in discharging Mrs. Logue when she was not stable nor appropriate for discharge under the circumstances;

v.      Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately perform

appropriate tests given Mrs. Logue's signs, symptoms, medical history, and/or condition;

w.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to request or order appropriate consultations given Mrs. Logue's signs, symptoms, medical history, and/or condition;

x.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to address, request or order the respiratory/pulmonary concerns, consultation and/or work up described, recommended or suggested by Mrs. Logue's cardiologist;

y.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately communicate with Mrs. Logue's other health care providers regarding the respiratory/pulmonary concerns, consultation and/or work up described, recommended or suggested by Mrs. Logue's cardiologist;

z.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, work up and/or treat Mrs. Logue's history, signs, symptoms, findings and/or conditions, for example, those related to her respiratory/pulmonary status and the patterns and significance thereof;

aa.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately order, perform, interpret, respond to, work up and report on tests, observations, studies, films and examinations to aid in the diagnosis and treatment of Mrs. Logue's history, signs, symptoms, findings and/or conditions, for example, those related to her respiratory/pulmonary status and the patterns and significance thereof;

bb.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, work up and/or treat the aforesaid and other condition(s) and/or distress from which Mrs. Logue suffered preoperatively and/or postoperatively;

cc.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately order, perform, repeat, read, interpret, diagnose, react to and/or report on consultation reports, prior medical records, vital signs, physical exams, blood pressure analysis, CBC analysis, blood and/or fluid volume analysis, and/or apparent clinical signs and symptoms of Mrs. Logue;

dd.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its

walls in that there was a failure to timely, properly and/or adequately enter, review, revise and/or carry out physician orders and/or recommendations regarding Mrs. Logue;

ee.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately work up Mrs. Logue to discover, diagnose and then treat the source and/or cause of Mrs. Logue's history, signs, symptoms, findings and/or conditions, for example, those related to her respiratory/pulmonary status and the patterns and significance thereof;

ff.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately consider, recognize, diagnose and/or report that Mrs. Logue was not a proper surgical candidate under the circumstances;

gg.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately consider, recognize, diagnose and/or report that Mrs. Logue was not a proper candidate for postoperative discharge under the circumstances;

hh.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to admit Mrs. Logue to a hospital or other

appropriate facility for pre-operative and/or post-operative care, treatment, observation and monitoring;

ii.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to perform surgery upon Mrs. Logue in a facility capable of providing her with all necessary post-operative care, treatment, observation and monitoring;

jj.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately become knowledgeable or otherwise aware of Mrs. Logue's prior and continually developing and/or changing clinical/medical picture and/or history;

kk.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately determine and respond to the significance and/or medical implication(s) of Mrs. Logue's prior and continually developing and/or changing clinical/medical picture and/or history;

ll.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately recognize, assess, respond to, diagnose, report, keep appraised of, work up and/or to treat Mrs. Logue's clinical/medical condition and/or her signs, symptoms, findings,

medical history and/or test results;

mm.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately avail himself/herself of available and pertinent medical writings, publications, information and diagnostic technology both prior to and during Mrs. Logue's treatment;

nn.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately order and/or perform indicated and appropriate monitoring, diagnostic tests, consultations and medical procedures to aid in the timely, proper and/or adequate diagnosis and treatment of Mrs. Logue's signs, symptoms, findings, test results and/or medical conditions;

oo.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately avail himself/herself of information, test results, studies, opinions, assessments, diagnoses and materials regarding Mrs. Logue which were available at or through SurgCenter of Bel Air, LLC, Drs. Gehris, Jordan, Day & Associates, LLC and/or Physicians Anesthesia Associates, P.A., as well as from other doctors, therapists, medical offices and hospitals;

pp.   Failing to timely, properly and/or adequately train, supervise and/or oversee all

persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately maintain a continuity in care among the various participating and/or available healthcare providers;

qq.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately perform and/or repeat patient observation, examinations, tests and/or studies;

rr.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately order, interpret, act on, work up and/or report findings from consultations, examinations, tests, observations and/or studies;

ss.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to give significance to the findings, recommendations and/or diagnoses of other physicians, therapists and/or nurses involved in Mrs. Logue's care and treatment, particularly those related to her respiratory and/or pulmonary status for surgery;

tt.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately respond to notification by other physicians, nurses and/or healthcare workers of Mrs.

Logue's condition and/or the signs, findings and/or symptoms thereof;

uu.  Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in improperly ignoring  and/or discounting the significance of findings, recommendations and/or diagnoses of other physicians, nurses and/or healthcare workers with regard to Mrs. Logue's condition, signs, findings and/or symptoms;

vv.  Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in relinquishing responsibility for the care and/or treatment of Mrs. Logue to others less qualified or not able to appropriately investigate, work up and/or treat her condition(s);

ww.  Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately make entries in Mrs. Logue's medical chart and/or comply with applicable rules, protocols, regulations, policies, procedures and/or by-laws with respect thereto, so as to properly document Mrs. Logue's signs, symptoms, medical conditions, and/or orders or recommendations relating thereto;

xx.  Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice medicine, nursing or other health care services within its walls in that there was a failure to timely, properly and/or adequately provide discharge instructions and/or patient education;

yy.    Increasing the risk of harm to Mrs. Logue, for the reasons set forth in the above subparagraphs;

zz.    Being vicariously liable for the negligence and/or other liability producing conduct of its employees, agents and contractors, as described in Count III.

**WHEREFORE**, Plaintiff, Matthew Logue, individually and as Administrator of the Estate of Shelby Ann Logue, deceased, hereby demands judgment in his favor and against defendants, Patient First Corporation and Patient First Bel Air, individually, jointly, severally and/or in the alternative, for compensatory damages, interest, costs of suit, and such other and further relief as this court deems just.

**COUNT VI**
**WRONGFUL DEATH**
**PLAINTIFF, MATTHEW LOGUE AS ADMINISTRATOR OF THE ESTATE OF SHELBY ANN LOGUE, v. ALL DEFENDANTS**

99. Plaintiff incorporates by reference the above paragraphs as if fully set forth herein at length.

100.    Plaintiff, Matthew Logue, as Administrator of the Estate of Shelby Ann Logue, deceased, brings this action on behalf of the survivors/beneficiaries of the decedent under and by virtue of the Maryland Wrongful Death Act, and claims all damages available pursuant to the Act as a result of the death of Shelby Ann Logue due to the aforesaid individual, joint, several and/or alternative negligence and liability producing conduct of the defendants.

**WHEREFORE**, Plaintiff, Matthew Logue, as Administrator of the Estate of Shelby Ann Logue, deceased, hereby demands judgment in his favor and against all defendants, individually, jointly, severally and/or in the alternative, for compensatory damages, interest, costs of suit, and such other and further relief as this court deems just.

**<u>DEMAND FOR TRIAL BY JURY</u>**

Pursuant to <u>Fed.R.Civ.P.</u> 38, Plaintiff, Matthew Logue, individually and as Administrator of the Estate of Shelby Ann Logue, deceased, by and through his undersigned counsel, hereby demands a trial by jury as to all issues so triable.

           12/8/2016                            Michael H. Bereston, Esquire

DATED: _____         BY:_____

Respectfully submitted by:

**Michael H. Bereston, Inc.**

_____
Michael H. Bereston, Esquire
Bar No.: 11219
138 Main Street, Suite 200
P.O. Box 2990
Annapolis, Maryland 21404-2990

bereston@berestonlaw.com
410-269-5011

Attorney for the Plaintiffs