# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MATTHEW S. LOGUE *et al.*,　　　　*

　　　Plaintiffs,　　　　　　　　*

　　v.　　　　　　　　　　　　*

PATIENT FIRST CORPORATION, *et al*.　*

　　　Defendants.　　　　　　　*

**CIVIL NO. JKB-16-3937**
**(consolidated with 17-2097)**

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

## MEMORANDUM

This consolidated medical malpractice suit seeks damages in relation to the death of Shelby Ann Logue at her home in Pennsylvania on May 20, 2014.  Plaintiffs are her surviving family members and the potential beneficiaries of her estate.  The moving Defendants are Maryland physician Katherine V. Day, M.D., and her practice, Drs. Gehris, Jordan, Day & Associates, LLC.[1] Now pending before the Court is Defendants' motion *in limine* advocating for the application of Maryland substantive law to Plaintiffs' claims against them.  (ECF No. 163.)  The motion is fully briefed and no hearing is required.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons set forth below, Defendants' motion will be granted.

### I.　　Factual and Procedural Background

The procedural history and facts are set forth at length in the Court's prior Memorandum Opinion (ECF No. 150) and are incorporated by reference and briefly repeated as necessary to provide context and to resolve the pending motion.  On May 19, 2014, Dr. Day performed a

---

[1] In their Answer to the Third Amended Complaint, Defendants state that the practice is actually named "Drs. Gehris, Jordan & Associates, LLC."  (ECF No. 80 ¶ 23.)  However, in their motion *in limine*, Defendants use the name "Drs. Gehris, Jordan, Day & Associates, LLC."  (ECF No. 163.)  In keeping with the motion, the Court will refer to the Defendant as "Drs. Gehris, Jordan, Day & Associates, LLC" in this memorandum.

tonsillectomy, septoplasty, and inferior turbinate reduction surgery on Mrs. Logue in Maryland. (Mem. Op. at 1, 11–13, ECF No. 150.)  While she was in postoperative recovery in Maryland, Mrs. Logue's oxygen saturation levels fell below the normal range.  (*Id.*)  Following treatment, her oxygen levels stabilized, and Mrs. Logue was discharged to her home in Pennsylvania.  (*Id.*)  After being left to sleep for the night, Mrs. Logue was found unconscious and pulseless by her husband Matthew Logue in the early hours of May 20, 2014.  (*Id.*)  She was pronounced dead shortly thereafter.  (*Id.*)  According to the various experts who have offered opinions, Mrs. Logue died of hypoxia, which was caused by a combination of factors potentially including undertreated asthma, undiagnosed obstructive sleep apnea, and opioid medications prescribed to treat pain associated with the surgery.  (*Id.* at 13–14.)

After Mrs. Logue's death, her surviving family members sued a number of medical providers, including Dr. Day and Drs. Gehris, Jordan, Day & Associates, LLC.  (*See* Third Am. Compl., ECF No. 71.)  Plaintiffs brought two different types of claims.  First, in their capacities as Mrs. Logue's family members, Plaintiffs brought wrongful death claims under the Maryland Wrongful Death Statute, Md. Code Ann., Cts. & Jud. Proc. § 3-901, *et seq.*, seeking damages for the harm they allegedly suffered as a result of Mrs. Logue's death.  (*Id.*)  Second, in his capacity as the administrator of Mrs. Logue's estate, Matthew Logue brought "survival action" claims on Mrs. Logue's behalf pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-401 and Md. Code Ann., Est. & Trusts § 7-401, pursuing damages Mrs. Logue could have recovered if she had not died. (*Id.*)

Following the close of discovery, a number of Defendants moved for summary judgment— though Dr. Day and Drs. Gehris, Jordan, Day & Associates, LLC did not.  (*See* ECF Nos. 129, 132, 133.)  Two Defendants who provided treatment to Mrs. Logue in Pennsylvania raised the

issue of whether Maryland or Pennsylvania substantive law should apply to their conduct (*see* Patient First Mot. Summ. J. Mem. Supp., ECF No. 132-4), and Plaintiffs argued for the application of Pennsylvania law to those Defendants, since their allegedly culpable acts occurred in Pennsylvania (*see* Opp'n to Patient First Mot. Summ. J., ECF No. 142 at 16–17). The other Defendants did not address choice of law and assumed the application of Maryland law.

In its summary judgment memorandum, the Court conducted a choice of law analysis and found that Pennsylvania substantive law applied to each moving Defendant's conduct under Maryland's *lex loci delicti* choice of law rule. (Mem. Op. at 15–16.) The Court denied summary judgment to all Defendants. (*See id.* at 19.) Subsequently, each of the summary judgment Defendants agreed to a settlement with Plaintiffs.

Following summary judgment, Dr. Day and Drs. Gehris, Jordan, Day & Associates, LLC filed the pending motion *in limine* arguing that Maryland substantive law, not Pennsylvania substantive law, applies to their conduct. (Mot. in Limine Mem. Supp., ECF No. 163-2.) Defendants point out that they did not have the opportunity to brief the issue prior to the Court's summary judgment decision, identify certain deficiencies in the summary judgment briefing on the issue, and argue that the Court should come to a different conclusion regarding the substantive law applicable to their conduct. (*See id.*) Plaintiffs oppose the motion. (Opp'n to Mot. in Limine, ECF No. 164.)

## II.     *Analysis*

The sole question raised by Defendants' motion *in limine* is what state's substantive law applies to Plaintiffs' claims against them. Sitting in diversity, a federal court applies the choice of law rules of the forum state, which, in this case, is Maryland. *See DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 807 (4th Cir. 2013). Under Maryland law, different choice of law rules apply

to Plaintiffs' survival action and wrongful death claims.  The survival action claims are subject to Maryland's typical *lex loci delicti* choice of law rule for tort claims.  However, the Maryland Legislature included in the Maryland Wrongful Death Statute a choice of law clause which displaces the *lex loci delicti* rule, and it is this special choice of law rule that applies to Plaintiffs' wrongful death claims.  *See* Md. Code Ann., Cts. & Jud. Proc. § 3-903.  Applying the relevant choice of law rule to each cause of action, the Court finds that Maryland substantive law applies to these Defendants.

### A. Wrongful Death Claims

The Maryland Wrongful Death Statute allows a family member of an individual who dies as a result of tortious conduct to sue "on his or her own behalf, for certain losses the person suffered by reason of the wrongful death of the victim."  *Smith v. Borello*, 804 A.2d 1151, 1154 (Md. 2002), *opinion after certified question answered*, 50 F. App'x 107 (4th Cir. 2002).  Section 3-903(a) of the Wrongful Death Statute addresses choice of law in wrongful death actions and establishes that "[i]f the wrongful act occurred in another state, the District of Columbia, or a territory of the United States, a Maryland court shall apply the substantive law of that jurisdiction."  In *Jones v. Prince George's County*, the Court of Appeals of Maryland construed this clause as meaning that, "where a particular defendant's alleged wrongful act or acts all occurred in Maryland, the substantive tort law of Maryland applies and not the law of another state where the death occurred."  835 A.2d 632, 639 (Md. 2003).

Here, all of Dr. Day's allegedly culpable actions took place in Maryland.[2]  *Jones* is thus on point and dictates that the substantive law of Maryland applies to Plaintiffs' Wrongful Death Statute claims against Dr. Day and Drs. Gehris, Jordan, Day & Associates, LLC.

---

[2] In their opposition brief, Plaintiffs claim that Dr. Day failed to call Mrs. Logue on the afternoon of May 19, after Mrs. Logue had returned to Pennsylvania, and argue that by doing so, Dr. Day committed a final act of negligence in

## B.   Survival Action

Md. Code Ann., Cts. & Jud. Proc. § 6-401 and Md. Code Ann., Est. & Trusts § 7-401 establish that following an individual's death, her personal representative may bring a "survival action" on behalf of the decedent's estate "for the economic and non-economic losses suffered by the victim prior to his or her death."  *Smith*, 804 A.2d at 1154; *see also Jones v. Flood*, 716 A.2d 285, 290 (Md. 1998) ("[W]rongful death damages begin with the death of the person wronged. [S]urvival action damages end with the death of the person wronged.") (internal quotations omitted).  Maryland's typical *lex loci delicti* choice of law rule applies to survival actions.  *See Sacra v. Sacra*, 426 A.2d 7 (Md. Ct. Spec. App. 1981).  Under this rule, the substantive rights of the parties "are to be determined by the law of the state in which the alleged tort took place." *Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 230 (Md. 2000) (quoting *White v. King*, 223 A.2d 763, 765 (Md. 1966)).  "The tort is complete only when the harm takes place, for this is the last event necessary to make the actor liable for the tort."  Herbert F. Goodrich, Handbook of the Conflict of Laws § 93, at 263–64 (3d ed. 1949), *quoted in Angeletti*, 752 A.2d at 232.  Following the infliction of the tortious injury, "[t]he person harmed may thereafter go into another state and die from the injury or suffer other loss therefrom," but the locus of the tort remains the place of injury, not the place of subsequent loss or death.  Restatement (First) of Conflict of Laws § 377 cmt. 1 (1934); *see also Sacra*, 426 A.2d 7 (where automobile collision occurred in Delaware but decedent did not die until crossing into Maryland, Delaware was the place of the injury).

In medical malpractice cases, it can be difficult to pinpoint the precise point at which an alleged tortious injury occurs.  The law is clear that a cognizable "injury is deemed to occur where the plaintiff first suffers harm, even if the tortious conduct subsequently results in additional or

---

Pennsylvania.  This allegation was not included in Plaintiffs' pleadings, and even if it were, it would not alter the Court's conclusion, since Dr. Day remained in Maryland at the time Plaintiffs claim she failed to call Mrs. Logue.

more severe harm elsewhere." *Williams v. Gyrus ACMI, Inc*., 790 F. Supp. 2d 410, 414 (D. Md. 2011).   As such, in cases where a surgeon accidentally leaves a foreign object inside a patient's body, the tortious harm occurs immediately, since the patient has a cognizable cause of action the moment the foreign object is negligently left in the body.   *See id*.   Likewise, in cases in which a doctor fails to diagnose a condition that is causing a patient harm, an injury is deemed to occur at the time of misdiagnosis, even if the patient's symptoms intensify dramatically after the misdiagnosis.   *See Green v. N. Arundel Hosp. Ass'n*, 785 A.2d 361 (Md. 2001) (tortious injury occurred when doctor misdiagnosed patient's symptoms of neurologic distress, not when patient subsequently suffered life-altering cardiac-arrest days later); *see also Burnside v. Wong*, 986 A.2d 427 (Md. 2010) (compiling cases).   However, some courts have found in cases involving medical devices that malfunction after implantation that the locus of the tortious injury is the place where the malfunction occurs, not the place of implantation.   *See Winkler v. Medtronic*, *Inc*., Civ. No. PX-18-865, 2018 WL 6271055, at *3 (D. Md. Nov. 29, 2018) (finding place of injury was state in which device malfunctioned and decedent died, not state in which device was implanted); *but see Allen v. Bos. Sci. Corp.,* Civ. No. 13-06738, 2015 WL 5838511, at *2 (S.D. W. Va. Oct. 5, 2015) (applying Maryland substantive law because the "implantation surgery that allegedly resulted in [the plaintiff's] injuries took place in Maryland").

   Accepting for the purposes of this motion the allegations in the Third Amended Complaint and the factual claims made by Plaintiffs' expert witnesses, it is a very close question at what point the moving Defendants' conduct allegedly resulted in a cognizable tortious harm to Mrs. Logue.[3] When Mrs. Logue left Maryland on May 19, all parties apparently believed her surgery had been a success, and it was not until after her return to Pennsylvania that Defendants' alleged negligence

---

[3] The Court notes that it makes no determinations regarding Defendants' liability and merely accepts the factual assertions underlying Plaintiffs' theory of the case for the limited purpose of resolving the choice of law issue.

allegedly manifested in her death.  However, after carefully reviewing the allegations, evidence, and the authorities cited in the parties' briefing, the Court finds that the alleged tortious injury occurred in Maryland.  The Court finds compelling that Maryland is the state in which: (1) Dr. Day performed the surgical procedure on Mrs. Logue; (2) Dr. Day allegedly failed to diagnose or treat Mrs. Logue's obstructive sleep apnea; (3) Mrs. Logue's postoperative hypoxia first manifested when her oxygen saturation levels fell below the normal range; and (4) Dr. Day agreed to discharge Mrs. Logue with instructions to use opioid medications, in spite of this hypoxia.  (*See, e.g.*, Manaker Rep't at 5–7, Ex. C to Opp'n to Mot. in Limine, ECF No. 164-4; Trott Rep't at 2–5, Ex. H to Opp'n to Mot. in Limine, ECF No. 164-9; Opp'n to SurgCenter Mot. Summ. J., ECF No. 139 at 10–15; Third Am. Compl. ¶¶ 70–84, 105.)  Given that the allegedly injurious surgery, the alleged misdiagnoses and failure to treat, the first manifestation of the deadly postoperative decrease in oxygen levels, and the allegedly negligent discharge decision all occurred in Maryland, Maryland is the locus of the tortious harm allegedly caused by Dr. Day and the jurisdiction in which any negligence claims Mrs. Logue's estate may have against these Defendants arose.

### C.  *Summary Judgment Decision*

The Court recognizes the apparent inconsistency between its holding here and its prior finding that Pennsylvania substantive law applied to the summary judgment Defendants.  Though the Court notes that its prior decision regarding the choice of law applicable to the wrongful death claims against the Pennsylvania treatment providers remains consistent with its analysis here, and that the outcome of the summary judgment motions would have been no different if decided under Maryland law, there is no denying that the analysis in this memorandum is somewhat in conflict with the Court's previous finding that the place of death dictated the choice of law.

The Court is very hesitant to revisit its prior legal determinations.  Though there can be no doubt that the Court has the authority to do so under Federal Rule of Civil Procedure 54(b), the considerations of finality and judicial economy both weigh against allowing parties to relitigate questions to which the Court has already provided an answer.  However, the moving Defendants have identified controlling legal authorities that were not identified in the summary judgment briefing (and which the Court did not identify independently), including on-point Maryland Court of Appeals decisions providing binding interpretations of relevant Maryland law.  These Defendants did not previously have the opportunity to raise this authority or litigate the choice of law issue, and they have now done so in a timely manner.  In this rare instance, a second examination of the prevailing law is both appropriate and necessary.

### III.    Conclusion

For the foregoing reasons, an order shall enter granting the motion *in limine* of Dr. Day and Drs. Gehris, Jordan, Day & Associates, LLC seeking the application of Maryland substantive law to Plaintiffs' claims against them.

DATED this 15th day of May, 2020.

BY THE COURT:

_____/s/_____

James K. Bredar
Chief Judge